JUDGE RAMOS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

SAMER AL QABBANI,

                        Plaintiff,

      -against-

THE CITY OF NEW YORK; ORQUUIDE
GENAO; MARIANELLA LARA; WILLINGTON
FELIZ; and JOHN/JANE DOES, Nos. 1-10
(members of the New York City Police Department
whose names are presently unknown to plaintiff),

                        Defendants.
----------------------------------------------------------------x

**15 CV 02794**

**COMPLAINT**

**Jury Trial Demanded**

**ECF Case**

Plaintiff SAMER AL QABBANI, by his attorney, Robert T. Perry, respectfully alleges as follows:

## NATURE OF ACTION

1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

3.    The Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## JURY DEMAND

5.     Plaintiff respectfully demands trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.     Plaintiff SAMER AL QABBANI is a resident of Queens, New York.

7.     Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York. The City maintains the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which the City is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

8.     Defendant ORQUUIDE GENAO (Shield No. 3090) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Genao was a police officer assigned to Transit Division District 2. Defendant Genao is being sued in her individual capacity.

9.     Defendant MARIANELLA LARA (Shield No. 11165) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Lara was a police officer assigned to Transit Division District 2. Defendant Lara is being sued in her individual capacity.

10.     Defendant WILLINGTON FELIZ is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein,

2

defendant Feliz was a lieutenant assigned to Transit Division District 2.  Defendant Feliz is being sued in his individual capacity.

11.    All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers, and servants of the NYPD.  The Doe defendants are being sued in their individual capacities.

12.    At all relevant times herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers, and servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times herein, the individual defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers, and servants of the NYPD.

13.    At all relevant times herein, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

## STATEMENT OF FACTS

14.    On Saturday, January 11, 2014, at 4:06 a.m., inside the subway station at Eighth Avenue and West 14th Street in Manhattan, plaintiff and a friend Tarik Gorfti lawfully passed through a turnstile using their Metrocards.

15.    Defendants Genao, Lara, and Feliz nonetheless approached, stopped, and arrested plaintiff and Mr. Gorfti sometime after 4:15 a.m., about 100 feet or more from the turnstile through which plaintiff and Mr. Gorfti had lawfully passed, for "jumping the turnstile" and/or "doubling up."

16.    Plaintiff and Mr. Gorfti each denied jumping the turnstile or doubling up, as they had lawfully passed through a turnstile using their Metrocards.

17.    Plaintiff and Mr. Gorfti showed their Metrocards to defendants Genao, Lara, and Feliz and urged the defendants to verify that both Metrocards had just been used.

18.    Even though there was a booth attendant on duty who could have verified that both Metrocards had just been used, defendants Genao, Lara, and Feliz refused to ask the booth attendant to do so.

19.    Plaintiff and Mr. Gorfti verbally protested their arrests to defendants Genao, Lara, and Feliz without raising their voices or using inappropriate language.

20.    The polite verbal protests angered defendants Genao, Lara, and Feliz.

21.    Defendant Genao swore at plaintiff and Mr. Gorfti, saying "shut the fuck up."

22.    Defendant Genao told plaintiff and Mr. Gorfti, in sum and substance, "If she was a man, she would beat them up."

23.    Defendants Feliz and Genao disparaged plaintiff's and Mr. Gorfti's national origin, stating, in sum and substance, "Moroccans are animals," "You beat women," and "You cannot do it over here."

24.    Plaintiff was handcuffed excessively tightly behind his back.

25.    Plaintiff repeatedly asked a female officer to loosen the handcuffs but she refused to do so.

26.    Plaintiff and Mr. Gorfti were taken to a police area in the subway station at Broadway and Canal Street and later to Central Booking at 100 Centre Street.

27.    In connection with plaintiff's and Mr. Gorfti's arrests, defendants Genao, Lara, and Feliz conspired to prepare and did prepare a false and misleading police report which they

forwarded to the New York County District Attorney's Office ("District Attorney") and conspired to make and did make false and misleading statements to the District Attorney. As a result, the District Attorney decided to prosecute plaintiff and Mr. Gorfti.

28.     At about 1:00 a.m. on Sunday, January 12, 2014, plaintiff and Mr. Gorfti were separately arraigned in the Criminal Court of the City of New York, New York County.

29.     Plaintiff was charged with Theft of Services (N.Y. Penal Law § 165.15(3)) and Criminal Trespass in the Third Degree (N.Y. Penal Law § 140.10(a)) based on a complaint sworn to by defendant Genao alleging that at about 4:15 a.m. on January 11, 2014 inside the subway station at Eighth Avenue and West 14th Street in Manhattan, she observed plaintiff "doubling up" with Mr. Gorfti through a turnstile. This allegation was false, as plaintiff and Mr. Gorfti did not double up through a turnstile.

30.     Mr. Gorfti was charged with Theft of Services (N.Y. Penal Law § 165.15(3)), Criminal Trespass in the Third Degree (N.Y. Penal Law § 140.10(a)), and Disorderly Conduct (N.Y. Penal Law § 240.20(3)) based on a complaint sworn to by defendant Genao alleging that at about 4:15 a.m. on January 11, 2014 inside the subway station at Eighth Avenue and West 14th Street in Manhattan, she observed Mr. Gorfti "doubling up" with plaintiff through a turnstile and yelling in substance: "What are you talking about? I swiped my fucking Metrocard. You don't know what the fuck you're talking about." These allegations were false, as plaintiff and Mr. Gorfti did not double up through a turnstile, and Mr. Gorfti did not yell or use profanity.

31.     Plaintiff and Mr. Gorfti each pleaded not guilty because they were entirely innocent of the charges.

32.     The District Attorney offered plaintiff and Mr. Gorfti each an adjournment in contemplation of dismissal but they each declined the offer, since they were entirely innocent of the charges.

33.     Plaintiff and Mr. Gorfti were released on their own recognizance after having spent nearly 21 hours in custody.

34.     On January 29, 2014, the New York City Transit Authority verified that plaintiff and Mr. Gorfti both used their Metrocards on Saturday, January 11, 2014, at 4:06 a.m., inside the subway station at Eighth Avenue and West 14th Street.

35.     On January 31, 2014, the Disorderly Conduct charge against Mr. Gorfti was dismissed on motion of the District Attorney.

36.     On February 19, 2014, all charges against plaintiff and Mr. Gorfti were dismissed on motion of the District Attorney.

37.     The above occurred as a direct result of unconstitutional customs, policies, and practices of the City and the NYPD, including, without limitation: the inadequate screening, hiring, retention, training, and supervision of police officers; disproportionately stopping, detaining, and falsely arresting minorities based on insufficient and/or constitutionally suspect criteria; arresting innocent people in order to meet productivity goals or arrest quotas or for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or falsifying evidence in an attempt to justify a false arrest.

38.     The existence of these customs, policies, and practices may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York and in New York State courts, as well as from notices of claims filed with the City's Office of Comptroller

and complaints filed with the NYPD's Internal Affairs Bureau and the City's Civilian Complaint Review Board.

39.     In denying the City's motion to dismiss a municipal liability claim on *Iqbal/Twombly* grounds in *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009), the Honorable Jack B. Weinstein observed:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department, there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Id.* at *2.

40.     Seemingly acknowledging the problem, then New York City Police Commissioner Raymond E. Kelly stated, "When it happens, it's not for personal gain.  It's more for convenience."  Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.

41.     Since 2005, the NYPD has refused to prosecute 40% of the cases referred by the Civilian Complaint Review Board ("CCRB") for prosecution.  Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.  And only 25% of the cases found substantiated by the CCRB resulted in NYPD discipline more severe than verbal instructions.  *Id.*

42.     The City has inadequately screened, hired, retained, trained, and supervised police officers, including those named as defendants herein, to respect the constitutional rights of individuals with whom they come in contact.

43.     As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of liberty, physical restraints, and violation of his constitutional rights.

## FIRST CLAIM FOR RELIEF

### (False Arrest Claim Under 42 U.S.C. § 1983)

44.     Plaintiff repeats and realleges paragraphs "1" through "43" with the same force and effect as if they were fully set forth herein.

45.     Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Excessive Force Claim Under 42 U.S.C. § 1983)

46.     Plaintiff repeats and realleges paragraphs "1" through "45" with the same force and effect as if they were fully set forth herein.

47.     Defendants, acting in concert and within the scope of their authority, used objectively unreasonable force in arresting plaintiff, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### (Equal Protection Claim Under 42 U.S.C. § 1983)

48.     Plaintiff repeats and realleges paragraphs "1" through "47" with the same force and effect as if they were fully set forth herein.

55.     Defendants, acting in concert and within the scope of their authority, retaliated against plaintiff for verbally protesting his arrest, in violation of plaintiff's right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

## SEVENTH CLAIM FOR RELIEF

### (Failure to Intervene Claim Under 42 U.S.C. § 1983)

56.     Plaintiff repeats and realleges paragraphs "1" through "55" with the same force and effect as if they were fully set forth herein.

57.     Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, in violation of plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

## EIGHTH CLAIM FOR RELIEF

### (Municipal Liability Claim Under 42 U.S.C. § 1983)

58.     Plaintiff repeats and realleges paragraphs "1" through "57" with the same force and effect as if they were fully set forth herein.

59.     Defendants, singly and collectively, acting under color of state law, engaged in conduct that constituted customs, policies, and practices forbidden by the Constitution of the United States, including, but not limited to: disproportionately stopping, detaining, and falsely arresting minorities based on insufficient and/or constitutionally suspect criteria; arresting innocent people in order to meet productivity goals or arrest quotas or for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or falsifying evidence in an attempt to justify the false arrest.

60.     The City and the NYPD have inadequately screened, hired, retained, trained and supervised police officers.

61.     The foregoing customs, policies, and practices constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

62.     The foregoing customs, policies, and practices were the direct and proximate cause of the constitutional violations suffered by plaintiff.

63.     The foregoing customs, policies, and practices were the moving force behind the constitutional violations suffered by plaintiff.

64.     The foregoing customs, policies, and practices deprived plaintiff of the right to be free from unreasonable seizure, in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

(A)     Compensatory damages in an amount to be determined at trial;

(B)     Punitive damages in an amount to be determined at trial;

(C)     Reasonable attorney's fees and costs of this litigation; and

(D)     Such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
       April 10, 2015

Respectfully submitted,

Roberts/T. Perry

ROBERT T. PERRY (RP-1199)
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

SAMER AL QABBANI,         :
               :
          Plaintiff,   :
               :
    -against-         :
               :
THE CITY OF NEW YORK; ORQUUIDE  :
GENAO; MARIANELLA LARA; WILLINGTON  :
FELIZ; and JOHN/JANE DOES, Nos. 1-10  :
(members of the New York City Police Department :
whose names are presently unknown to plaintiff),  :
               :
          Defendants.  :
----------------------------------------------------------------x

**COMPLAINT**

ROBERT T. PERRY
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*